[Crim. No. 315. First Appellate District.—September 8, 1911.]

## THE PEOPLE, Respondent, v. DESSIE ARNOLD, Appellant.

CRIMINAL LAW—GENERAL OATH TO REPORTER BEFORE GRAND JURY—OATH NOT REQUIRED TO BE REPEATED IN EACH CASE EXAMINED.—A general oath administered to a phonographic reporter employed to transcribe the evidence taken before the grand jury, faithfully to perform the duties of his office as reporter of the grand jury, is a sufficient compliance with the statute; and it is not necessary that he be repeatedly and specifically sworn to act in each individual case that may be called to the attention of the grand jury.

ID.—POWERS OF FOREMAN OF GRAND JURY TO ADMINISTER OATH TO REPORTER.—Although section 925 of the Penal Code does not expressly authorize the foreman of the grand jury to administer the oath to the person appointed to act as its reporter, yet he is authorized under the general provision of section 2093 of the Code of Civil Procedure, which confers the authority to administer oaths upon every person empowered to take testimony and decide upon evidence.

ID.—REPORTER CALLED AS WITNESS—PROPER PRACTICE—TRANSCRIPTION OF HIS OWN TESTIMONY—ABSENCE OF PREJUDICE.—Where the reporter was called as a witness before the grand jury, it would be the safer and better practice to appoint another reporter to take his testimony; but when it is conceded that he fully and correctly reported and transcribed his own testimony, no prejudice resulted from the failure to observe the better practice.

ID.—SUPPOSED IRREGULARITY NOT A GROUND FOR SETTING ASIDE INDICTMENT.—The supposed irregularity of the official reporter in reporting his own testimony is not one of the statutory grounds of a motion to set aside the indictment, and it was properly ignored by the trial court upon the hearing of a motion to set aside the indictment.

ID.—READING OF DEPOSITION BEFORE GRAND JURY BY DISTRICT ATTORNEY.—The district attorney has the right to appear before the grand jury for the purpose of properly presenting the evidence before them, and it was proper that he should read before them the deposition of a witness in a proceeding instituted against the defendant in the police court, which was relevant and material to the charge under investigation by the grand jury.

ID.—CHARGE OF GRAND LARCENY—MISAPPROPRIATION OF INTRUSTED MONEY TO BUY MINING STOCK—SUPPORT OF VERDICT.—Evidence that $150 was intrusted to the defendant for the sole purpose

of purchasing mining stock for the complaining witness, and that the defendant, after repeated demands, refused to return the money or produce the certificate of stock, is sufficient to show that the title of the money remained in the complaining witness until the stock was purchased, and to support a verdict of guilty of the crime of grand larceny.

ID.—EVIDENCE OF PRIOR LIKE FRAUDS OF DEFENDANT—PURPOSE OF SHOWING FELONIOUS INTENT CHARGED.—The court properly admitted evidence of other like frauds committed by the defendant prior to the commission of the offense charged, for the limited purpose of showing the felonious intent of the defendant prior to and at the time when defendant obtained the money of the complaining witness.

ID.—INTENT A MATERIAL INGREDIENT OF CRIME—CONTROVERTED POINT— PROOF OF OTHER CRIMES.—Where the intent which was a material ingredient in the crime charged was the only controverted point in the case, the evidence of previous similar and systematic frauds would have a legitimate tendency to show that the defendant in her dealings with the complaining witness was prompted by a specific intent to deceive and defraud, and it was, for this purpose, competent, relevant and material and clearly admissible, notwithstanding it may have also tended to show the commission of other crimes not charged in the indictment against the defendant.

ID.—INSTRUCTION GIVEN AT PLAINTIFF'S REQUEST NOT REVIEWABLE.— An instruction given at plaintiff's request, which was not inconsistent with the general charge given, cannot be considered or reviewed upon appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

Wm. Hoff Cook, and Carroll Cook, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, Deputy Attorney General, for Respondent.

LENNON, P. J.—The defendant was convicted, after indictment, of the crime of grand larceny, and appeals from the judgment and the order denying her motion for a new trial.

In support of her claim that the defendant's motion to set aside the indictment was improperly denied, the point

is presented that no oath was especially administered to the person who acted as stenographic reporter for the grand jury before he entered upon the duty of reporting the testimony taken in the particular case of this defendant. The record of the proceedings had in the lower court upon the hearing of the motion to set aside the indictment discloses that when the grand jury was first impaneled and organized Howard Vernon was appointed as the official reporter, and that before entering upon his duties there was administered to him by the foreman a general oath to correctly take in shorthand and transcribe all of the testimony given by any witness testifying before the grand jury. It is the contention of the defendant that the statute does not authorize such a general oath, and that where the services of a reporter are required by the grand jury he should be repeatedly sworn to report each particular case under investigation. It is further claimed that the foreman of the grand jury was authorized by statute to swear only the witnesses who might be called to testify, and that nowhere in the law is there to be found any authority for the foreman administering an oath to the reporter who may be called upon to serve the grand jury. From this it is argued that unless an oath be administered in each particular case, and by someone with power to administer oaths other than the foreman of the grand jury, the reporter is not qualified to act; and that if, under such circumstances, he is permitted to be present at the session of the grand jury at which a defendant is indicted, he must be considered as a person other than those permitted to be present by the provisions of section 925 of the Penal Code.

This section, as we read and understand it, does not require that the reporter of the grand jury must be especially sworn in each and every case that may be under investigation. The language of the section is broad enough to warrant the interpretation that the reporter who is appointed and, in the first instance, sworn to serve the grand jury is to continue in that capacity at the pleasure of the grand jury until its labors are completed. We are of the opinion that when the reporter is once sworn to faithfully perform the duties of his office this is a substantial and sufficient compliance with the statute, and it is not necessary that he be

repeatedly and specifically sworn to act in each individual case that may be called to the attention of the grand jury.

It is true that section 925 of the Penal Code does not authorize the foreman of the grand jury to administer the oath to the person appointed to act as its reporter, and that the legislature has omitted to designate in express terms who shall administer such oath. However, section 2093 of the Code of Civil Procedure provides: " . . . Every officer or person authorized to take testimony in any action or proceeding, or to decide upon evidence, has power to administer oaths." The foreman of the grand jury is an officer of the court, and he, in conjunction with his fellow grand jurors, is certainly empowered to take testimony and to decide upon evidence. It would seem, therefore, that under the general provisions of the section last quoted the foreman of the grand jury was authorized to administer the oath in question.

Defendant makes the further point in support of her motion to set aside the indictment that Howard Vernon, the official reporter of the grand jury, was called as a witness for the people upon the investigation of the crime charged against her, and that he was permitted and required to report and transcribe his own testimony. In this behalf the record shows that Vernon, who was also the official reporter of the police court of the city and county of San Francisco, was called as a witness to identify and certify to the correctness of the deposition of one E. C. Miles, who, as a witness for the people, had given testimony in a proceeding previously instituted against the defendant in the police court, which was relevant and material to the charge then being investigated by the grand jury. Ordinarily it would have been the safer and better method to have appointed another reporter, if one was available, to take the testimony of the witness. It was conceded however in the lower court that Vernon correctly reported and transcribed his own testimony, and no suggestion was then or is now made that the defendant was in any manner prejudiced by the procedure adopted in this instance. Moreover, the supposed irregularity is not one of the statutory grounds of a motion to set aside an indictment, and it was therefore properly ignored by the trial court upon the hearing of the motion to set aside the indictment in the case at bar.

The record does not sustain the assertion of counsel for the defendant that a deputy district attorney was called as a witness before the grand jury, and gave testimony against the defendant without being sworn. The record shows that during the course of the examination of the witness Vernon a deputy district attorney read the deposition hereinbefore referred to. This apparently was done in aid of an intelligent development of the testimony sought to be introduced upon the hearing, and it was a necessary incident to the right of the district attorney, conferred by section 925 of the Penal Code, to be present at the sessions of the grand jury for the purpose of interrogating witnesses.

Counsel for the defendant claims that the evidence adduced at the trial does not support the verdict of the jury, finding the defendant guilty of the crime of grand larceny. It is insisted that the crime, if any, committed by the defendant was that of obtaining money by false pretenses. This claim is based upon the assumption that the evidence affirmatively shows that the complaining witness parted with the title to, as well as the possession of, the money charged to have been feloniously taken by the defendant. We cannot agree with this interpretation of the testimony. The undisputed facts upon which the defendant was indicted and convicted are in substance and effect these:

The defendant claimed to be a spiritualist and posed as clairvoyant. The complaining witness, Mrs. Francis Shaw, attended a number of seances given by the defendant, and eventually became a pupil of the defendant in the study of spiritualism. At one of these seances Mrs. Shaw was induced, by false and fraudulent pretenses and the deceit and artifice commonly employed in cases of larceny by trick and device, to give the defendant the sum of $150, with which to purchase for the complaining witness certain mining stock. When the defendant received this money she said to the complaining witness: "Now, don't be uneasy about your money; you will get it back again, I guarantee, with good interest. . . . I will get a certificate in a couple of weeks." The certificate of stock did not materialize at the end of two weeks, and upon several occasions thereafter the complaining witness demanded of the defendant the promised certificate of stock or the return of the money. For several months the

defendant evaded doing either upon the pretext, made from time to time, that she was unable to purchase the stock. Finally and without any explanation of her conduct the defendant flatly refused to return the money or produce the certificate of stock. However, after a civil suit to recover the money had been instituted, the defendant tendered a paper writing, which she said was a certificate of stock. This the complaining witness refused to accept, saying, "I don't want the certificate, I want my money."

From all the facts in the case the jury was justified in finding, as implied by the verdict, that the complaining witness never intended to vest in the defendant the title to the money in question, and that it was at all times the defendant's intent and purpose by trick and device to get possession of the money and then appropriate it to her own use. It is undisputed that the money was intrusted to the defendant for the sole purpose of purchasing mining stock, and until this purpose was executed the title to the money, in the eyes of the law, remained in the complaining witness. It was therefore the subject of larceny, and its misappropriation by the defendant, coupled with a pre-existing design to defraud the complaining witness, constituted the crime of larceny. (*People* v. *Delbos,* 146 Cal. 737, [81 Pac. 131].)

The trial court did not err in its ruling permitting the district attorney, over the objection of the defendant, to show that prior to the crime here charged against her the defendant had systematically tricked and defrauded several other persons under like circumstances and by methods and means similar to those employed by the defendant upon the complaining witness in this case.

This evidence was admitted for the single purpose of showing the felonious intent of the defendant prior to and at the time she obtained possession of the money of the complaining witness, and for that limited purpose it was clearly admissible.

The intent of the defendant at the time she obtained possession of the money determined the character of her offense; and while it is true generally that the intent with which a person does an act may be inferred from all of the surrounding circumstances, the prosecution nevertheless is not limited in its efforts to establish that intent to mere proof of the bald facts of the transaction.

It was, therefore, the right and duty of the district attorney to show affirmatively, if he could, a felonious intent, or failing in that, to negative an innocent intent on the part of the defendant.

The doing of the acts charged against the defendant was not disputed. Her intent, which was a material ingredient of the crime charged, was the only controverted point in the case; and it is clear that evidence of previous similar and systematic frauds would have a legitimate tendency to show that the defendant, in her dealings with the complaining witness, was prompted by a specific intent to deceive and defraud. For this purpose the evidence complained of was competent, relevant and material, and therefore it was clearly admissible notwithstanding it may have also tended to show the commission of other crimes not charged in the indictment against the defendant. (*People* v. *Gray,* 66 Cal. 271, [5 Pac. 240]; *People* v. *Whalen,* 154 Cal. 473, [98 Pac. 194]; *Makin et ux.* v. *Attorney General,* 63 L. J. Rep. [N. S.] 41; *Regina* v. *Heesom,* 14 Cox C. C. 40.)

Complaint is made of one instruction given by the trial court in its charge to the jury. This particular instruction does not appear to be in conflict with the balance of the court's charge, and as it was given at the request of the defendant the error, if any, in the giving of it cannot now be considered or reviewed. (*People* v. *Rodley,* 131 Cal. 240, [63 Pac. 351].)

The judgment and order are affirmed.

Hall, J., and Kerrigan, J., concurred.